# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **STEVEN LEWIS EMERY,** ] | |
| ] | |
| **Movant,** ] | |
| ] | |
| v. ] | **Case No.: 5:23-cv-08033-ACA** |
| ] | |
| **UNITED STATES OF AMERICA,** ] | |
| ] | |
| **Respondent.** ] | |

## MEMORANDUM OPINION

Steven Lewis Emery, proceeding *pro se*, moves under 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. (Doc. 1). He contends that trial counsel provided ineffective assistance by falsely telling him that the government would file a United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1 motion if he entered the plea agreement and by failing to object when the government did not file a § 5K1.1 motion, and that the government breached the plea agreement by failing to file a § 5K1.1 motion. (Doc. 7 at 10–17). Because Mr. Emery's ineffective assistance claims are meritless and his breach of plea agreement claim is procedurally barred, the court **WILL DENY** the § 2255 motion. The court also **WILL DENY** a certificate of appealability.

I.    BACKGROUND

A grand jury indicted Mr. Emery for (1) three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) ("Counts One, Two, and Three"); (2) possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) ("Count Four"); (3) possession with intent to distribute five grams or more of methamphetamine, in violation of § 841(a)(1) ("Count Five"); and (4) two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) ("Counts Six and Seven"). *United States v. Emery*, case no. 19-cr-228, doc. 1 (N.D. Ala. June 30, 2014).[1]

Mr. Emery and the government entered a plea agreement under which Mr. Emery agreed to plead guilty to Counts Two, Three, Four, and Seven and the government agreed to move to dismiss Counts One, Five, and Six. (*Emery* doc. 31 at 1). In the plea agreement, Mr. Emery stipulated to the conduct underlying Counts Two, Three, Four, and Seven. (*Id.* at 3–7). Specifically, police officers found a gun and a baggie of methamphetamine inside a car he had been driving and two guns and a box of ammunition under the pillow of his bed in the house where he lived. (*Id.* at 4–5). He admitted to the officers that the guns and the methamphetamine were his and that the guns under his pillow were for protection. (*Id.*). On another occasion,

---

[1] The court will cite documents from Mr. Emery's criminal proceeding as "*Emery* doc. __."

Mr. Emery crashed his car after fleeing a traffic stop. (*Emery* doc. 31 at 5–6). After police captured him, he stated that he kept a loaded gun in the car. (*Id.* at 6). Police later found the gun located where Mr. Emery had said it would be. (*Id.*).

The plea agreement also contained a cooperation agreement under which Mr. Emery agreed to provide information to the government and "[i]n the event the defendant provides assistance that rises to the level of 'substantial assistance,' as that term is used in USSG § 5K1.1, the government agrees to file a motion requesting a downward departure in the calculation of the defendant's advisory guideline sentence." (*Id.* at 8–9). The agreement continued: "The defendant agrees that the determination of whether the defendant's conduct rises to the level of 'substantial assistance' . . . lies solely in the discretion of the United States Attorney's Office." (*Emery* doc. 31 at 9). The plea agreement concluded with a section in which Mr. Emery stated that he had read and understood the agreement and that "**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE**." (*Id.* at 17). Mr. Emery initialed that section and signed the agreement. (*Id.* at 17–18).

At the change of plea hearing, Mr. Emery testified that he had read and understood the plea agreement. (*Emery* doc. 58 at 5). The prosecutor stated that under the plea agreement, if Mr. Emery did not provide substantial assistance, the government would recommend a within-guidelines sentence and an adjustment for

acceptance of responsibility. (*Id.* at 14). Defense counsel stated that he and Mr. Emery "spent hours" going over the plea agreement and that it described everything on which Mr. Emery was relying. (*Id.* at 14–15). Mr. Emery testified that he had enough time to go over the agreement. (*Emery* doc. 58 at 15). He denied that "anyone promised [him] anything . . . to enter this plea." (*Id.* at 17). The court accepted his plea. (*Id.* at 19–20).

The presentence investigation report assigned Mr. Emery a total offense level of 29 and a criminal history category of VI, resulting in an advisory guidelines range of 151 to 188 months' imprisonment for Counts Two, Three, and Four, to be followed by a mandatory 60-month sentence for Count Seven. (*Emery* doc. 49 ¶¶ 41, 64, 123). Before sentencing, the government filed a sentencing memorandum recommending a sentence at the low end of the guidelines range because of Mr. Emery's "cooperation with law enforcement 'up-front.'" (*Emery* doc. 44 at 2). But the government refused to file a § 5K1.1 motion because a special agent who interviewed Mr. Emery believed that he had revealed only information the agent "already knew concerning the drug trade in the Northern District" and he "lied about other information." (*Id.* at 3). Mr. Emery filed a sentencing memorandum asking for a downward variance to a sixty-three-month sentence for Counts Two, Three, and Four, to be followed by the mandatory five-year sentence for Count Seven, based primarily on his personal history. (*Emery* doc. 45 at 1–2, 6–7).

At the sentence hearing, the court adopted the presentence investigation report without change. (*Emery* doc. 59 at 7, 14–15; *see also Emery* doc. 51 at 1). Defense counsel stated that the prosecutor's "5K motion is appreciated, to the extent he gave us credit." (*Emery* doc. 59 at 9). He argued that the court should sentence Mr. Emery to less than the government's recommendation because Mr. Emery had provided as much information as he had and the information provided led to law enforcement busting a "significant drug ring." (*Id.*). The government responded, clarifying that it had not filed a § 5K1.1 motion because the government believed Mr. Emery had not been truthful or provided all the information he knew. (*Id.* at 11–12). The court rejected Mr. Emery's request for a downward departure and sentenced him to concurrent sentences of 120 months' imprisonment for Counts Two and Three and 151 months' imprisonment for Count Four, to be followed by a sentence of 5 years' imprisonment for Count Seven. (*Id.* at 14; *see also Emery* doc. 50 at 2).

Mr. Emery appealed, represented by the same attorney. (*See* doc. 11-2 at 2). Mr. Emery conceded that his position was foreclosed by binding precedent holding that the government's decision whether to file a § 5K1.1 motion is discretionary, but he argued that because he had provided substantial assistance, the government's refusal to file a § 5K1.1 motion was a breach of the plea agreement. (*Id.* at 13–29). The Eleventh Circuit affirmed, holding that the government did not breach the plea agreement because it promised to file a § 5K1.1 motion only if Mr. Emery provided

5

substantial assistance, it had the discretion to determine whether Mr. Emery had provided substantial assistance, and it determined that he did not do so. (Doc. 1 at 15).

In connection with his § 2255 motion, Mr. Emery submits a declaration attesting that, after he reviewed the plea agreement, he asked trial counsel why the agreement did not promise that the government would file a § 5K1.1 motion. (Doc. 7 at 22 ¶ 10). Defense counsel told Mr. Emery that "the language was standard and . . . he had been personally assured by the United States that they would be filing the § 5K1.1 Motion." (*Id.*). Counsel also told Mr. Emery that "the only stipulation the United States placed on filing the § 5K1.1 Motion was that they not find anything to suggest that the information [he] provided them was untruthful or inaccurate." (*Id.*). Mr. Emery attests that he did not knowingly offer any untruthful or inaccurate information. (*Id.* at 22 ¶ 11).

## II.   DISCUSSION

Mr. Emery asserts three claims in his § 2255 motion, all relating to the government's failure to file a § 5K1.1 motion: (1) trial counsel was ineffective for falsely advising Mr. Emery that the government had promised to file a § 5K1.1 motion ("Claim One"); (2) trial counsel was ineffective for failing to object to the government's failure to file a § 5K1.1 motion ("Claim Two"); and (3) the government breached the plea agreement by failing to file a § 5K1.1 motion ("Claim

Three"). (Doc. 7 at 10–17). The government contends that Claims One and Two are meritless and Claim Three is procedurally barred. (Doc. 6 at 6–16). The court will begin with the ineffective assistance claims before turning to the third claim.

    1. Ineffective Assistance

To prevail on a claim of ineffective assistance of counsel, Mr. Emery must demonstrate both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficient performance, the movant "must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quotation marks omitted). To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Both ineffective assistance claims relate to the government's failure to file a § 5K1.1 motion and whether the plea agreement required the government to file one. (Doc. 7 at 10–14). Section 5K1.1 permits a court to depart from the guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. But a defendant cannot compel the government to

file a § 5K1.1 motion based on his own assessment that he provided substantial assistance if the government promised only to file a § 5K1.1 motion if, in its discretion, it determined that the defendant had provided substantial assistance. *See United States v. Dorsey*, 554 F.3d 958, 961 (11th Cir. 2009) ("A defendant who merely claims to have provided substantial assistance . . . is not entitled to a remedy or to even an evidentiary hearing.").

Mr. Emery cannot establish that trial counsel performed deficiently by providing him false information about the plea agreement or by failing to object to the government's failure to file a § 5K1.1 motion. With respect to trial counsel's representations to Mr. Emery, the plea agreement stated that the government would file a § 5K1.1 motion "[i]n the event the defendant provides assistance that rises to the level of 'substantial assistance'" and that the government had sole discretion to determine whether Mr. Emery had provided substantial assistance. (*Emery* doc. 31 at 8–9). Mr. Emery initialed that section of the plea agreement, initialed the section disclaiming the existence of any other promises or representations, and signed the agreement as a whole. (*Id.* at 7–9, 17–18). At the change of plea hearing, Mr. Emery testified under oath that he had read and understood the plea agreement, that he had enough time to review the agreement, and that no one had promised him anything to induce him to enter the agreement. (*Emery* doc. 58 at 5, 15, 17).

8

"[S]olemn declarations in open court carry a strong presumption of verity." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014). Mr. Emery therefore "bears a heavy burden to show his statements [at the change of plea hearing] were false." *Id.* (quotation marks omitted). He has not borne that burden. The evidence Mr. Emery proffers does not establish that his statements at the change of plea hearing were false; to the contrary, it bolsters his statements at the change of plea hearing. Mr. Emery's declaration makes clear that he understood the government's obligation under the plea agreement was only to consider filing a § 5K1.1 motion. (*See Emery* doc. 7 at 22 ¶ 10). Mr. Emery also admits that defense counsel told him that the government would not file a § 5K1.1 motion if the government believed he had provided untruthful or inaccurate information. (*Id.*). He simply disagrees with the government's assessment that the information he provided was incomplete and untruthful. (*See id.* at 22 ¶ 11). Accordingly, because the record refutes Mr. Emery's claim that trial counsel told him that the government promised to file a § 5K1.1 motion, he cannot prevail on Claim One.

Mr. Emery also cannot establish that trial counsel performed deficiently by failing to object to the government's failure to file a § 5K1.1 motion. The plea agreement gave the government sole discretion to decide whether any information Mr. Emery provided constituted "substantial assistance" and, therefore, whether to file a § 5K1.1 motion. (*Emery* doc. 31 at 9). Any objection to the government's

9

failure to file a motion would have been overruled because "[a] defendant who merely claims to have provided substantial assistance . . . is not entitled to a remedy or to even an evidentiary hearing." *See Dorsey*, 554 F.3d at 961. And an attorney's failure "to make a meritless objection does not constitute deficient performance." *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015). Accordingly, Mr. Emery cannot prevail on Claim Two.

    2. <u>Breach of Plea Agreement</u>

Claim Three is that the government violated Mr. Emery's right to due process by failing to file a § 5K1.1 motion after inducing Mr. Emery to plead guilty by promising to file such a motion. (Doc. 1 at 7; doc. 7 at 15–17). The government responds that this claim is procedurally barred because he already raised it before the Eleventh Circuit. (Doc. 6 at 15–16).

The procedural bar provides that "once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quotation marks omitted). On direct appeal, the Eleventh Circuit held that the government did not breach the plea agreement by declining to file a § 5K1.1 motion. (Doc. 1 at 14–15). Accordingly, Mr. Emery may not relitigate that issue in his § 2255 motion, even by couching it in terms of due process instead of terms of breach of contract.

### III. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Cases, Rule 11(a). The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or "that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted). This court finds that Mr. Emery has not satisfied either standard. The court **WILL DENY** a certificate of appealability.

### IV. CONCLUSION

The court **WILL DENY** Mr. Emery's § 2255. The court **WILL DENY** a certificate of appealability.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this April 29, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE